United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CROSTHWAITE, RUSS BURNS, in their respective capacities as Trustees of the OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GLAVIN CONSTRUCTION MANAGEMENT, a partnership; GLAVIN CONSTRUCTION COMPANY, INC., a California Corporation, and PATRICK J. GLAVIN, individually, <br><br> Defendants. | No. C 07-01241 WHA <br><br><br> **ORDER GRANTING DEFAULT JUDGMENT** |

**INTRODUCTION**

In this ERISA action, plaintiffs move for a default judgment against defendants, who have never appeared in this action. An examination of the *Eitel* factors favors an entry of a default judgment in this case for injunctive relief. In addition, plaintiffs should be awarded damages for the contributions owed from the previously conducted audit, as well as liquidated damages and interest on this amount. Plaintiffs should also be awarded attorney's fees and costs. Therefore, plaintiffs' application for a default judgment is **GRANTED** as to these requests. However, plaintiffs' application for liquidated damages and interest as to an amount to be determined from a future audit is **DENIED WITHOUT PREJUDICE**.

**STATEMENT**

Plaintiffs filed a complaint seeking damages and injunctive relief on March 1, 2007. The complaint alleged a breach of a collective bargaining agreement (CBA) between Operating Engineers Local Union No. 3 and defendants. This action to enforce the CBA is brought under the provisions of the Employment Retirement Income Security Act, 29 U.S.C. 1132, and the Labor Management Relations Act, 29 U.S.C. 185. The complaint and declarations accompanying plaintiffs' application for default judgment allege as follows.

Plaintiffs are trustees and fiduciaries of a number of trust funds and employee benefit plans established under ERISA and the LMRA (Compl. ¶ 1). They allege that defendants have failed to contribute money due under the terms of the CBA to certain trust funds and seek an injunction against defendants allowing for an audit to determine what money, if any, is owed. The trust funds, according to the complaint, "provide health and welfare, vacation, pension, and other benefits for operating engineers on whose behalf contributions are made" (Compl. ¶ 8). Plaintiffs claim that the applicable agreement allows for an audit of the signatory employer's books in order to ascertain whether all fringe benefit contributions have been paid (Compl ¶ 11). Plaintiffs ask for an injunction under Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3), in order to conduct an audit. If the audit finds that defendants owe money to the trust funds, plaintiffs seek unpaid contributions, interest, liquidated damages, reasonable attorney's fees and costs under Sections 502(g)(1) and 502(g)(2) of ERISA, 29 U.S.C. 1132(g)(1)–(2) (Compl. ¶ 19). Plaintiffs also seek damages for audit liability covering January 1, 2004, to December 31, 2005, under the terms of the CBA, as well as fees and liquidated damages (Compl. ¶ 21). Finally, plaintiffs seek damages for breach of defendants' fiduciary duty under ERISA, 29 U.S.C. 1001, *et seq*.

Plaintiffs allege that defendants executed a CBA with Operating Engineers Local Union No. 3 and that defendants became bound to the agreement by reporting its employees' hours of covered work to the trust funds through defendants' account with the funds (Compl. ¶¶ 6–7). Defendants allegedly promised to contribute and pay the trust funds an hourly amount

2

per employee as required by the master agreement referenced in the CBA, and agreed to be bound by all the terms of the master agreement (Compl. ¶ 10).

The CBA states in Section 2 that "[a]ll of the provisions of the current Master Agreement between the Union and the Associated General Contractors of California, Inc. ('AGC') . . . are incorporated herein as if set forth in full herein" (Stafford Decl. Exh. B at 1). In Section 1, Paragraph 10, the CBA states that "[i]f an Individual Employer sells or transfers any of its assets, stock, and/or operations, it will provide as a term of the sale or transfer that the buyer or transferee shall recognize the Union as the Employees' bargaining agent and will assume the agreement" (Stafford Decl. Exh. B at 1). The agreement was apparently signed by defendant Patrick Glavin, representing defendant Glavin Construction Management. Since the complaint alleges that defendant Glavin Construction Company is the alter ego or successor of Glavin Construction Management, defendant Glavin Construction Company would still be bound by the agreement under Paragraph 10 (Compl. ¶ 2).

The master agreement, incorporated into the CBA by reference, includes specified amounts to be paid into the required trust funds, and states in Section 12.13.01 that if the employer fails to pay, liquidated damages and interest are to be assessed (McBride Decl. Exh. E at 1–2). The Master Agreement also provides that an employer must provide his records to an auditor upon written request (McBride Decl. Exh. D at 2). According to Section 04.04.08, the employer must pay wages, benefits, and other funds due upon audit, plus auditor's fees, attorney's fees, and costs (McBride Decl. Exh. C at 1).

An audit conducted for the period of January 1, 2004, through December 31, 2005, revealed that defendants owed $6,205.63 in (Compl. ¶ 18). Defendants have allegedly failed to pay this amount. In light of this and other reporting discrepancies, plaintiffs brought this action on March 1, 2007. Plaintiffs completed substituted service on the defendants on March 6, 2007. Defendants did not serve plaintiffs with a responsive pleading within twenty days, as required by FRCP 12(a)(1)(A), or otherwise appear in this case. Upon plaintiffs' request, the Clerk entered the defendants' default on July 17, 2007. Notice of this motion was provided to

3

defendant by placing a copy of all relevant documents in the mail, addressed to defendant corporations.

**ANALYSIS**

Under Federal Rule of Civil Procedure 55(b)(2), a party can apply to the court for an entry of judgment by default. The decision of a district court as to whether to enter a default judgment "is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980). The factors to be considered, known as the *Eitel* factors, are as follows:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors strongly favor an entry of default judgment in this case.

**1.  SUBSTANTIVE MERITS AND SUFFICIENCY OF THE COMPLAINT.**

After an entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Additionally, the district court is "not required to make detailed findings of fact." *Id.* at 906. The merits of plaintiffs' substantive claims are thus considered together with the sufficiency of the complaint. Since plaintiffs allege that defendants breached the CBA and bring this motion for default judgment to compel defendants to act in accordance with its terms, this is a breach of contract claim for the purpose of determining the merits and sufficiency of the complaint. The second, third and fifth *Eitel* factors weigh in favor of granting a default judgment.

In order to prevail in an action for breach of contract, plaintiffs must show that (1) there is a contract, (2) plaintiff performed, (3) defendants breached, and (4) there is resulting damage. *See Careau & Co. v. Sec. Pac. Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1399 (1990). Here, the complaint sufficiently alleges a contract and the attached declarations suffice to show defendants' signature on the contract (Stafford Decl. Exh. B). While plaintiffs are not parties to the CBA they are fiduciaries under ERISA and can enforce its terms. In requesting an audit, they have done so, and performed their obligation. The complaint further alleges that

4

defendants breached the contract by not allowing an audit and for not paying contributions for the period from January 1, 2004, through December 31, 2005.  Finally, the complaint sufficiently alleges harm to the plaintiffs by contending that defendants have previously failed to make the requisite contributions to the trust funds at issue and has likely failed to do so for the period for which plaintiffs seek an audit.  As such, there is a strong showing on the merits of plaintiffs' claims, the complaint is well-pleaded, and there is little possibility of dispute over material facts.  *See Eitel*, 782 F.2d at 1471.

### 2. THE REMAINING *EITEL* FACTORS.

The other *Eitel* factors likewise weigh in favor of plaintiffs.  A denial of plaintiffs' motion will leave plaintiffs without a remedy, thus causing prejudice.  Plaintiffs seek both damages and an injunction, and will be prejudiced if they are denied a remedy.  Furthermore, defendants were effectively served in March, but have not become involved in the proceedings.  Though defendant Patrick Glavin is apparently currently involved in bankruptcy proceedings, Glavin Construction Company is not.  Thus, defendants' failure to respond or appear is not likely the result of excusable neglect.  Plaintiffs seek an injunction to compel defendants to comply with an agreement by which they were already bound.  An order compelling defendants to submit to an audit should not be especially burdensome, since the defendants willingly agreed to submit to audits under the CBA.  Although federal policy favors a decision on the merits, Rule 55(b) allows entry of default judgment in cases where the defendants have refused to participate.

Therefore, the *Eitel* factors collectively weigh in favor of default judgment, and plaintiffs request for damages stemming from unpaid obligations for the period from January 1, 2004, through December 31, 2005, as well as an injunction compelling defendants to comply with plaintiffs' audit requests, is **GRANTED**.

### 3. DETERMINATION OF INJUNCTIVE RELIEF, DAMAGES, FEES, AND COSTS.

Plaintiffs seek damages owed for the time between January 1, 2004 and December 31, 2005, consisting of "(1) principal contributions in the amount of $3,426.14; (2) liquidated damages in the amount of $980.00; and (3) interest in the amount of $360.70" (Compl. ¶ 24).

5

Plaintiffs further request that an injunction issue ordering defendants to submit to an audit covering the period from January 1, 2006, to the present and be ordered to pay over to plaintiffs such sums as ascertained to be due, including liquidated damages and interest as provided under ERISA Section 502(g)(2), 29 U.S.C. 1132(g)(2). ERISA provides:

> (g) Attorney's fees and costs: awards in actions involving delinquent contributions:
>
> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
>
> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce *section 1145* of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A) the unpaid contributions,
>
> (B) the interest on the unpaid contributions,
>
> (C) an amount equal to the greater of —
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. 1132(g)(2). Section 1145 states that every employer obligated to make contributions to a multi-employer plan under a collective bargaining agreement "shall make such contributions in accordance with the terms and conditions of such a plan." The Ninth Circuit has stated that an award of fees, costs, liquidated damages, and interest under 1132(g)(2) is only mandatory if: (1) the employer is delinquent at the time the action is filed; (2) the district court enters a judgment against the employer; and (3) the plan provides for such an award. *Nw. Adm'rs. Inc. v. Albertson's Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).

6

Plaintiffs' request for funds owed from the 2004–2005 audit is **GRANTED**. Because the defendants are delinquent as to those funds, a judgment has been entered against defendants, and the plan provided for such an award, the court must award liquidated damages and interest as well.

### A. Liquidated Damages and Interest.

Plaintiffs' request for liquidated damages and interest as to any unpaid contributions that may be found in an audit for the period of January 1, 2006, to the present is premature. Plaintiffs have not yet determined that defendants are in fact delinquent as to these contributions and cannot make such a determination without conducting an audit. This order finds no basis to award liquidated damages or interest under Section 1132(g)(2) until plaintiffs have calculated defendants' underlying obligations. This they will be able to do after defendants have been compelled to submit to an audit. Plaintiffs should not be awarded the right to assess liquidated damages and interest on an amount that is pure speculation at this point. Moreover, the CBA already provides for liquidated damages and interest, and plaintiffs may request that defendants comply with its terms once the audit has been conducted. If defendants refuse, plaintiffs may seek to enforce the determined amount in court at that time. Accordingly, plaintiffs' request for liquidated damages and interest related to an amount to be determined by the forthcoming audit is **DENIED WITHOUT PREJUDICE**.

### B. Attorney's Fees and Costs.

An award of attorney's fees is mandatory because defendants are delinquent with respect to the contributions owed for the period of January 1, 2004, through December 31, 2005. Even if an award of attorney's fees was not mandatory in this case, the Court finds that a discretionary award of fees would be warranted under ERISA, 29 U.S.C. 1132(g). Because the Court grants plaintiffs' motion for default judgment with regard to damages arising from the earlier audit and with regard to the requested injunction, and plaintiffs have sufficiently verified the amount of attorney's fees and costs accrued, this order finds that plaintiffs are entitled to the reasonable fees and costs they have requested (Mainguy Decl. at 2). As such, plaintiffs' request for fees and costs in the amount of $2097.50 is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for default judgment for damages relating to the earlier audit, an injunction, and attorney's fees is **GRANTED**. Plaintiffs' request for a default judgment with regard to damages arising from contributions that may be determined to be owed through an upcoming audit is **DENIED WITHOUT PREJUDICE**.

**IT IS HEREBY ORDERED:**

1. Defendants must pay plaintiffs $3,426.14 in unpaid contributions, $980.00 in liquidated damages, and $360.70 in interest related to the audit for the period of January 1, 2004 to December 31, 2005.

2. Defendants must submit to an audit by auditors selected by plaintiffs, which audit is to be conducted at defendants' premises during business hours at a reasonable time or times, and to allow said auditors to examine and copy defendants' books, records, papers, and reports relevant to the enforcement of the CBA and incorporated master and trust agreements for the period of January 1, 2006, to the present.

3. Defendants must pay plaintiffs' attorney's fees and costs of $2,097.50. Judgment shall be entered accordingly.

4. Plaintiffs must serve defendants with this order in a manner sufficient to ensure notice before attempting to conduct an audit under the injunction.

**IT IS SO ORDERED.**

Dated: September 25, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8